## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAVID PHILLIPS JR.,** | * | **CIVIL ACTION NO.:** |
| **Plaintiff** | * | |
| | * | **JUDGE:** |
| **v.** | * | |
| | * | **MAGISTRATE:** |
| **TANGIPAHOA PARISH SCHOOL** | * | |
| **BOARD** | * | |
| | * | |
| **Defendants** | * | **JURY DEMANDED** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, DAVID PHILLIPS JR., ("PHILLIPS"), who hereby files this Complaint and respectfully avers, as follows:

### INTRODUCTION

1. Plaintiff brings this action for declaratory judgment, equitable relief, and monetary damages to secure the protection against and to redress unlawful discrimination on the basis of race, color, gender, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et. seq.*, as amended ("Title VII") and the Louisiana Employment Discrimination Law codified as LSA-R.S. 23:332, *et seq.*

### JURISDICTION AND VENUE

2. The Court has original jurisdiction of the plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, 1343, 2202, and 42 U.S.C. §2000e-5.

3. Supplemental jurisdiction over Complainant's state law claims is invoked under both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367, because they are part of the same case or controversy as Complainant's federal claims.

4. This Court has personal jurisdiction over the Defendants- as each defendant is either domiciled in the Eastern District of Louisiana and the acts and omissions of all defendants

occurred in the Eastern District of Louisiana.

5.    Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in the Eastern District.

6.    Venue is also proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391 and 42 U.S.C.A. §2000e-5(g).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.    Complainant has satisfied all administrative prerequisites for filing suit under Title VII.

8.    On or about May 5, 2022, Philips filed an initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 6, 2022, the EEOC issued Complainant a Notice of Right to Sue.

9.    On August 26, 2022 and September 6, 2022, Philips filed a Second Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Corrected Charge of Discrimination and requested that a right to sue be immediately issued.

10.   This Complaint is being filed within 90 days of Complainant's receipt of the Notice of Right to Sue for his Charge of Discrimination from May 5, 2022.

## THE PARTIES

11.   Plaintiff, David Phillips Jr., ("Phillips"), is a person of the full age of majority, domiciled in the Parish of Tangipahoa, State of Louisiana. Philips was employed as a Special Education ("SPED") Teacher for the Tangipahoa Parish School Board ("TPSB") from August 3, 2021, until his termination effective June 17, 2022.

12.   Defendant, TPSB is domiciled in the Eastern District of Louisiana, and is located within the Eastern District of Louisiana. At all relevant times, TPSB was the Complainant's employer and had at least 20 employees.

13. Each of the acts and omissions complained of in this Complaint were committed by the Defendant and its agents while in the course and scope of their employment with the TPSB.

14. In doing the acts and/or omissions alleged, Defendant acted under color of authority and/or color of state law.

## FACTUAL ALLEGATIONS

15. Plaintiff, Phillips (medium skinned African American Male) was hired in August of 2021 as a SPED teacher for TPSB at Amite High Magnet School.

16. Phillips began to suffer from gender, color, and racial discrimination, targeting, and harassment in October of 2021.

17. On October 15, 2021, Phillips was falsely accused of harassment and theft by a co-worker, paraprofessional Ms. Deneisa Harrell (Light-skinned, African-American, female).

18. Phillips had a meeting with Dr. Travis Ford, the school principal (dark-skinned, African-American, male), Mrs. Iscinova Gray (light-skinned, African-American, female) and Mrs. Janet Hammons (Caucasian, white, female) concerning the allegations of Ms. Harrell. Initially, Ms. Harrell was present but stated that she was uncomfortable around Mr. Phillips and was allowed to leave with Ms. Gray and Ms. Hammons.

19. During the meeting with Dr. Ford, Phillips relayed that he believed he was being discriminated against because he was an African-American male. Phillips believed that Ms. Harrell was lying in order to inhibit him from gaining employment in a better position with the school board. Dr. Ford responded that he too has been accused of things like this but took no positive steps to investigate Ms. Harrell's statements or question others.

20. Ms. Harrell alleged that Phillips had broken into her desk drawer. The desk was located in Mr. Braud's (Caucasian, white, male) classroom. Although other faculty and students had

access to the desk, Dr. Ford did not question anyone else, and Phillips vehemently denied the veracity of this accusation.

21. Ms. Harrell also alleged that Phillips followed her home and made her feel uncomfortable for asking about her well-being when she was absent. These accusations came after Ms. Harrell entered Phillips classroom and asked him what he was doing. He simply replied that he was minding his own business. She found this response rude and began making the aforementioned accusations.

22. Dr. Ford, Mrs. Gray, and Mrs. Hammons did not investigate the veracity of Ms. Harrell's false accusations.

23. In response to the accusations, Dr. Ford, Mrs. Gray, and Mrs. Hammons substantially changed Phillips role and duties based on their belief in the false allegations made by Ms. Harrell without any investigation or due process for the accusation.

24. First, Dr. Ford told Phillips that he was not to visit the side of the school where Ms. Harrell worked. The administration directed him to not even park on that side of the school and to stay away from Ms. Harrell. His office/class space was located across the hall from Ms. Harrell, so he was no longer able to access his work area.

25. On October 19, 2021, Dr. Ford emailed the faculty stating that Phillips would now be working in a different capacity. He was informed that students would be sent to him in the school courtyard.

26. For over two weeks Philips had no place to conduct his work with these students. This forced him to carry his school materials and lunch during this time before the school provided a new office space, a band practice room with old school supplies and other junk.

27. Subsequently, Dr. Ford also changed Phillips duties to a substitute teacher role instead of

a SPED teacher. Phillips would often arrive at school and be assigned to an absent teacher's classroom without any notice. Phillips was no longer able to complete his regular duties as a SPED teacher.

28.    After the October incident, Phillips felt a shift in his relationship with the administration team. They were no longer having personal communication with him. Furthermore, their expectations of him changed  to intentionally set him up for further discipline.

29.    On November 8, 2021, Ms. Hammons made additional requirements for submitting lesson plans. Prior to the October incident there had never been an issue with Phillips' plans, nor was he required to submit them.

30.    Similarly, on November 15, 2021, Phillips was substitute teaching for an absent faculty per the directions of the administration. He received an email from Dr. Ford, reprimanding him for not attending his assigned duty spot. Dr. Ford threatened to write Phillips up for non-compliance if this occurred again. However, Phillips was not aware of whether to attend his duty spot or attend the duty spot of the teacher that he was substituting for.

31.    On or around November 30, 2021, Phillips filed a grievance with HR for TPSB alleging discrimination based on race, gender, and retaliation.

32.    TPSB failed to respond to the grievance process that Phillips initiated.

33.    During the spring testing, both Ms. Gray and Ms. Hammons entered a classroom that Mr. Phillips was watching, where the students finished testing and were using their cellphones. This was customary after testing and assignments were completed. However, at this time the assistant principals came in and reprimanded the students. Later, Phillips emailed Ms. Gray requesting support with students being on their phones, but he never received a response.

34.  Phillips was extremely anxious that he would accidently run into Ms. Harrell, making clocking-in during the morning stressful and caused him to clock in late to avoid Ms. Harrell, as instructed by principal Ford.

35.  Phillips was unable to attend after school related activities to act in accordance with the directive that he was to not come into contact with Ms. Harrell or her son, a student at the school where Harrell and Phillips worked. The administration requires teachers to participate in after-school activities. However, Phillips was unable to participate in these events due to Dr. Ford's directive and desire to avoid further unwarranted discipline by the administration.

36.  Phillips was in a constant state of concern that Ms. Harrell would make another false allegation, resulting in further discipline for Phillips.

37.  The hostile work environment was so severe and pervasive that Phillips tried to find other employment within TPSB, however, Phillips was retaliated against and his attempts to move and advance his career were intentionally thwarted.

38.  For example, Phillips applied for a position as a Behavior Interventionist in December 2021. The job postings stated that the position required a Louisiana licensure for school psychologist or as a Louisiana licensure for Clinical Social Worker. However, after interviewing on January 19, 2022, Susan DuBois stated that TPSB likes to interview Licensed Professional Counselors (LPCs) and Provisional Licensed Professional Counselors (PLPCs) because sometimes they can move people around. In that instance a retired school psychologist came out of retirement for the position, after TPSB approved this staffing because of the critical shortage of professionals.

39.  On January 26, 2022, Phillips had a meeting with Ms. Crystal Hooper, his supervisor for

his licensure requirement as a Provisional Licensed Professional Counselor. She told Phillips that someone in the school board office stated that Phillips had an issue with boundaries.

40.   On May 5, 2022, Phillips filed a charge of discrimination with the EEOC for discrimination based on sex, color, and race.

41.   Although Phillips continued to apply for other positions within TPSB, such as Behavior Interventionist, Social Emotional Learning teacher, and School Counselor with no success. However, less qualified employees, such as Ms. Whitney Walker (very light-skinned, African-American, Female), were recently hired for a Social and Emotional Learning Coach. Furthermore, TPSB never publicly posted this position. Similarly, TPSB hired a white female without a Master's in Social Work as a Behavior Interventionist.

42.   On June 17, 2022,  in retaliation for the EEOC charge, Dr. Ford sent Phillips notice that TPSB would not renew Phillips' contract for the 2022-23 school year.

43.   Phillips asserts that other light-skinned or non-African American employees and females at TPSB have been treated more favorably than Phillips.

    a.   Upon information and belief, TPSB did not question Mr. Braud about the stolen item from Ms. Harrell's file cabinet.

    b.   The administration believed Ms. Harrell's false accusations and TPSB never questioned her veracity.

44.   On August 26, 2022, Phillips filed a second charge of discrimination with the EEOC for retaliation, hostile work environment, and discrimination based on sex, race, and color and requested an immediate right to sue letter. The letter is still pending.

45.   The Defendants acts and/or omissions caused Phillips to suffer mental, emotional, and

psychological harm.

46. Phillips has suffered substantial loss in present and future wages, employment benefits, and future career opportunities as a result of Defendants' unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT 1
**Title VII, 42 U.S.C. § 2000e-3(a)**
**Retaliation**

47. Phillips realleges and incorporates herein by reference all the foregoing allegations.

48. Phillips engaged in protected activity, by opposing the disparate treatment and discrimination as described in preceding paragraphs.

49. TPSB, through Dr. Ford, Ms. Gray, and Ms. Hammons, retaliated against Phillips by engaging in a series of materially adverse actions against him that would have dissuaded a reasonable person from complaining of discrimination.

50. Defendants did not renew Phillips contract; furthermore, he lost the opportunity to secure other work when Defendants refused to hire Phillips for the multiple positions that he had applied. Defendants also failed to respond to the grievance process that Phillips initiated.

51. Defendants took adverse actions against Phillips because of his protected activities..

52. Defendant's actions were taken with malice and reckless disregard for Phillips' right to be free from discrimination and retaliation in the workplace.

53. For the foregoing reasons, Phillips is entitled to relief against TPSB for retaliation in violation of 42 U.S.C. § 2000-e3(a).

## COUNT 2
### Title VII, 42 U.S.C. §2000e-2(a)
### Disparate Treatment- Gender

54.   Phillips re-alleges and incorporates herein by reference all the foregoing allegations.

55.   Phillips is a member of a protected class, as a medium skinned African American male, and is qualified for the position he held.

56.   Phillips was the subject of mistreatment by several TPSB employees, including but not limited to Dr. Travis Ford, Ms. Gray, and Ms. Hammons on the basis of his gender. On multiple occasions TPSB treated Phillips differently than other non-male employees.

57.   Defendants chose to believe Ms. Harrell's false accusations and did not engage in any type of investigation even when Phillips denied the veracity of the statements. Defendants sent multiple emails changing Phillips' duties and office space so that he could not effectively do his job.

58.   TPSB's actions were taken with malice and reckless disregard for Phillips' right to be treated on an equal basis with women.

59.   The Parish discriminated against Complainants in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 3
### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment

60.   Phillips re-alleges and incorporates herein by reference all the foregoing allegations.

61.   As described in the preceding paragraphs, Phillips, as a member of a protected class, was subjected to unwelcome harassment/hostile work environment in the workplace based on his race and gender in retaliation for his objection to said hostile work environment and complaints of discrimination.

62.   TPSB employees, including but not limited to Dr. Travis Ford, Ms. Gray, and Ms.

Hammons began to treat Phillips differently. Their job expectations changed, including his duties, location, and constant changing expectations. Despite the confusion that administration caused through the ever-changing duties and responsibilities for Phillips, Dr. Ford reprimanded Phillips and threatened to write him up for being in the wrong duty spot. Phillips was also told to stay away from Ms. Harrell and her son, which meant he was in a constant state of anxiety that he might accidently run into them in the hallway.

63.   The harassment affected a term, condition, or privilege of his employment, causing him emotional distress and anxiety, unwarranted discipline, harm to his reputation, loss of promotion and other positions, and eventual resignation.

64.   TPSB failed to exercise reasonable care to prevent or correct the hostile work environment.

65.   TPSB employees' actions were taken with malice and reckless disregard for Phillips right to compete on an equal basis with non-African Americans and females to be free from retaliation.

66.   Phillips is entitled to relief because TPSB discriminated against Phillips in violation of 42 U.S.C. § 2000-e2(a).

### COUNT 4
### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Race

67.   Phillips realleges and incorporates herein by reference all of the foregoing allegations.

68.   Defendant, discriminated against Phillips on the basis of his race and color. Phillips was treated differently because of his color and race as an African American. Phillips was treated differently than similarly situated employees outside of his protected class. He was treated more harshly, targeted, scrutinized, and/or disciplined more severely than other non-African American and Caucasian similarly situated employees. Mr. Braud (Caucasian, white, male) who shared a room with Ms. Harrell was never questioned about the file

cabinet and stolen object.

69.   TPSB failed to exercise reasonable care either to prevent this discrimination or to promptly correct these practices.

70.   TPSB's conduct was intentional and done with malice or with reckless indifference to Phillips' federally protected rights.

71.   Phillips is entitled to relief because TPSB discriminated against him in violation of 42 U.S.C. § 2000-e2(a).

### COUNT 5
### Louisiana Employment Discrimination Act based on Race and Gender and Retaliation
### LA. R.S. § 23:301 et. seq.

72.   Phillips realleges and incorporates herein by reference all of the foregoing allegations.

73.   Defendant TPSB is liable to Phillips under the Louisiana Employment Discrimination Law, La. R.S. § 23:301 *et. seq.* as described in the preceding paragraphs.

### JURY DEMAND

65.   Phillips demands a Jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, after due proceedings are had, Phillips prays that this Complaint be deemed good and sufficient; and that this Court assume jurisdiction of this action and after trial:

i.   Grant Phillips a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request, from continuing to violate Title VII and state anti-discrimination laws;

ii.  Grant Phillips compensatory damages for:

   1.   Mental Anguish, Anxiety, and Emotional Distress;

   2.   Loss of Future Earnings, and Loss of Earnings Capacity;

      3.   Loss of Benefits;

iii.  Grant Phillips punitive damages in an amount to be determined at trial;

iv.  Award Phillips such other relief and benefits as the cause of justice may require, but not

     limited to, an award of costs and attorney's fees.

v.  For any and all other just and equitable relief to which Phillips may be entitled.

<div style="margin-left:40%">

Respectfully Submitted,
*/s/ Stephanie Dovalina*
Stephanie Dovalina, LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for David Phillips Jr.

</div>